IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JULIA HUNTER-McGINNIS, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 3:08-0650 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| RONAL SERPAS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Plaintiff, Julia Hunter-McGinnis, filed this action under 42 U.S.C. § 1983 against the Defendants: Ronal Serpas in his official capacity as Chief of Police of Metropolitan Nashville Davidson County; Sergeant Robert Fidler and Detective Matthew Valiquette of the Metro police department ("Metro").[1] Plaintiff asserts Fourth Amendment claims for the Defendants' alleged excessive use of force, unlawful detention and unreasonable seizure of her and a weapon from

---

[1] Serpas is the named only in his official capacity and the Court deems Metro to be the real party of interest. Leach v. Shelby County Sheriff, 891 F.2d 1241 (6th Cir. 1989). In her amended complaint, Plaintiff's complaint does not state whether Defendants Fidler and Valiquette are sued in their individual or official capacities. (Docket Entry No. 22). The second amended Complaint supersedes Plaintiff's original complaint. Clark v. Tarrant County, 798 F.2d 736, 740-41 (5th Cir. 1986). Plaintiff must plead whether the individual Defendants are sued in their individual or in their official capacities so as to inform them of Plaintiff's intent to seek personal liability, Moore v. City of Harriman, 272 F.3d 769, 775 (6th Cir. 2001) (en banc) unless the "course of proceedings" reflects the individual defendants' awareness of his or her potential personal liability. Here, the individual Defendants' assertion of the qualified immunity defense (Docket Entry Nos. 51 at 2 and 59 at 7) reflects their awareness of their potential individual liability. Biggs v. Meadows, 66 F.3d 56, 61 (6th Cir. 1995).

1

her residence. Plaintiff's claims arise out of her handcuffing and search of her residence in the execution of a search warrant for drugs by Defendants Fidler and Valiquette. Plaintiff alleges that Defendant Serpas's "Operation Safer Streets" program was also cause of these violations. Plaintiff also asserts a claim under the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code. Ann. § 29-20-101, et seq.

In earlier proceedings, the Court denied the Defendants' motion to dismiss and the Defendants' motion for summary judgment, but the latter order was without prejudice to renew upon completion of the additional discovery requested by Plaintiff and ordered by the Court.

Before the Court is the Defendants' motion for summary judgment (Docket Entry No. 98) contending, in sum: (1) that the state search warrant for evidence of illegal drug sales at Plaintiff's residence justified the Plaintiff's detention, handcuffing and search of Plaintiff's residence; (2) that Defendant Fidler was not personally involved in Plaintiff's handcuffing and cannot be liable solely as Defendant Valiquette's supervisor; and (3) that Defendant Valiquette was not present when Plaintiff complained of discomfort from the handcuffs.

## A. Findings of Fact[2]

On June 27, 2007, members of the Metro police department's north crime suppression unit executed a search warrant at Plaintiff's home in Nashville, Tennessee. (Docket Entry No.

---

[2] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that under applicable law, there are not any material factual disputes. Thus, the section constitutes findings of fact under Rule 56(d).
2

Case 3:08-cv-00650   Document 106   Filed 05/24/11   Page 2 of 12 PageID #: 1394

her residence. Plaintiff's claims arise out of her handcuffing and search of her residence in the execution of a search warrant for drugs by Defendants Fidler and Valiquette. Plaintiff alleges that Defendant Serpas's "Operation Safer Streets" program was also cause of these violations. Plaintiff also asserts a claim under the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code. Ann. § 29-20-101, et seq.

In earlier proceedings, the Court denied the Defendants' motion to dismiss and the Defendants' motion for summary judgment, but the latter order was without prejudice to renew upon completion of the additional discovery requested by Plaintiff and ordered by the Court.

Before the Court is the Defendants' motion for summary judgment (Docket Entry No. 98) contending, in sum: (1) that the state search warrant for evidence of illegal drug sales at Plaintiff's residence justified the Plaintiff's detention, handcuffing and search of Plaintiff's residence; (2) that Defendant Fidler was not personally involved in Plaintiff's handcuffing and cannot be liable solely as Defendant Valiquette's supervisor; and (3) that Defendant Valiquette was not present when Plaintiff complained of discomfort from the handcuffs.

## A. Findings of Fact[2]

On June 27, 2007, members of the Metro police department's north crime suppression unit executed a search warrant at Plaintiff's home in Nashville, Tennessee. (Docket Entry No.

---

[2] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that under applicable law, there are not any material factual disputes. Thus, the section constitutes findings of fact under Rule 56(d).

60, Defendants' Statement of Undisputed Facts at ¶ 1). Valiquette, a Metro detective, was the case officer and the affiant for the state search warrant. Id. at ¶ 2. Defendant Fidler, Valiquette's supervisor, earlier provided Valiquette with information from an informant that drugs were sold from Plaintiff's residence. Thereafter, Valiquette conducted a garbage search at Plaintiff's residence and found evidence of drug use, including "marijuana roaches." Valiquette applied for a warrant to search of Plaintiff's residence that a state trial judge granted.

When the Metro officers arrived at Plaintiff's residence, Plaintiff was outside her home near a truck and was told to "hit the ground." Id. at ¶ 14. Plaintiff was neither aggressive nor hostile and the Defendants' assessment of danger for this search was not high. Id. at ¶¶ 14, 15. Plaintiff was not handcuffed while she remained outside her residence. Id. At some point, Plaintiff entered her residence and Valiquette handcuffed Plaintiff by placing her arms one at a time behind Plaintiff's back. Id. at ¶ 20. Plaintiff asserts Valiquette ordered McCormack to take Plaintiff inside her home to be searched. Id. Valiquette told McCormack to bring Plaintiff into her kitchen for questioning . According to Plaintiff, when she requested to call her attorney, Plaintiff assert that Valiquette became angry and told her that she was going to jail. Id. at ¶ 20.

Plaintiff was not in pain when Valiquette initially handcuffed her and she did not complain to Valiquette of any pain from the handcuffing. Once inside her residence, Plaintiff sat in a chair and at some point, began to feel shoulder pain. William McGinnis, Plaintiff's son, testified that his mother repeatedly told Metro police about her prior shoulder injury. Officer Jean McCormack removed Plaintiff's handcuffs and placed the handcuffs in the front of Plaintiff. Id. at 39-40. Plaintiff asserts Metro police moved Plaintiff's handcuffs a few minutes before Metro police left her residence and after the search of Plaintiff's home was completed. (Docket

Entry No. 105 at ¶ 16). The search of Plaintiff's residence revealed marijuana, cocaine and a weapon. (Docket Entry No. 57-7). The search took two and one half to three hours. (Docket Entry No. 105 at ¶ 21). Metro police department policy requires the handcuffing during the execution of a search warrant for the safety of the officer and others. Id.

According to Plaintiff, this search arose from Defendant Serpas' initiation of "Operation Safer Streets" and "Operation Safe Neighborhoods" to increase police presence and enforcement activity as well as citizen assistance. Id. at ¶ 30. At the time of the search, Valiquette had basic and in-service training on use of force with his other courses comprising his 40 hours of annual in-service. (Docket Entry No. 68-6 at 24-25). Valiquette acknowledged that handcuffs can cause potential injuries.

## B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment `shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

4

> admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.... [W]e

5

find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'
>
> Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a

6

sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is `genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'

Liberty Lobby, 477 U.S. at 248, 252, 106 S. Ct. 2505, 91 L.Ed.2d at 211-212, 214 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

7

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

8

2.   Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3.   The movant must meet the initial burden of showing `the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4.   This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.   A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6.   As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.   The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.   The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9.   The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.   The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly"

established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

The threshold question of reasonableness of a search and/or seizure is to be resolved by the Court. Hunter v. Bryant, 502 U.S. 224 (1991). In Jeffers v. Heavrin, 10 F.3d 380, 381 (6th Cir. 1993), the Court of Appeals stated concerning an immunity contention regarding a Fourth Amendment Claim that, "[o]ur starting point is that probable cause determinations, even if wrong, are not actionable as long as such determinations pass the test of reasonableness. Reasonableness is a question of law to be decided by the trial judge." Accord Green, 80 F.3d at 1104.

In Gates, the Supreme Court defined the probable cause determination is to be made by use of a "totality of circumstances" approach:

> The task of the issuing [M]agistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

462 U.S. at 238.

The Fourth Amendment standard of objective reasonableness applies to all types of Fourth Amendment claims. Graham v. Connor, 490 U.S. 386 (1989). As a matter of law, the police can handcuff a person for two to three hours in connection with the execution of a search warrant for drugs where, as here, drugs and a weapon were found during the search. Muehler v.

10

Mena, 544 U.S. 93, 98-102 (2005). In Muehler, the Supreme Court cited its earlier holding that searches for drugs can give rise to "sudden violence and frantic efforts to conceal or destroy evidence." Id. at 100 (quoting Michigan v. Summers, 452 U.S. 692, 705 (1981)). In Summers, the Supreme Court held that where a search warrant is issued for contraband, police officers are granted authority "to detain the occupants of the premises while a proper search is conducted." 452 U.S. at 705. Thus, with the state court judge's issuance of a warrant for drugs, the officers were authorized to handcuff and detain Plaintiff.

As to the excessive force due to handcuffing, Plaintiff concedes that she was not in pain upon the initial handcuffing and when she complained of the pain, officer McCormack moved the handcuffs from Plaintiff's back to the front of Plaintiff. In any event, there are not any facts that either Fidler or Valiquette was present when Plaintiff complained about the handcuffs. Plaintiff admits Valiquette was not present. (Docket Entry No. 59, Defendants' Memorandum in Support of Summary Judgment at 14).

As to Plaintiff's arrest, for any Fourth Amendment claim, the test is an objective test without regard to an arresting officer's subjectiveness. Graham, 490 U.S. at 397. Here, with the presence of marijuana, cocaine and a weapon in Plaintiff's residence, there was probable cause to arrest Plaintiff.

As to Defendant Serpas in his official capacity, a prerequisite for municipal liability under § 1983 is that the officer's predicate acts must have violated the Plaintiff's federal rights. In City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986), the Supreme Court upheld the dismissal of a city and its police commission stating that: "[I]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have

11

authorized the use of constitutionally excessive force is quite beside the point." Here, without a Section 1983 claim against the Defendants Valiquette and Fidler, Plaintiff lacks a Section 1983 claim against Serpas or Metro.

As to Plaintiff's state law claims, the Court declines to exercise its supplemental jurisdiction on Plaintiff's TGTLA claims, for the reasons stated in Beddingfield v. City of Pulaski, 666 F. Supp. 1064 (M.D. Tenn. 1987), rev'd on other grounds 861 F.2d 968 (6th Cir. 1988). The Beddington ruling on declination to entertain TGTLA claims retains its viability. Gregory v. Shelby County, Tennessee, 220 F.3d 433, (6th Cir. 2000); Fromuth v. Metropolitan Gov't. Of Nashville, Davidson County, Tennessee, 158 F. Supp.2d 787, 789 (M.D. Tenn. 2001); Spurlock v. Whitley, 971 F. Supp. 1166, 1185 (M.D. Tenn. 1997) aff'd sub. nom Spurlock v. Satterfield, 167 F.3d 995 (6th Cir. 1999.

For the reasons set forth above, Defendants' motion for summary judgment (Docket Entry No. 60) should be granted, but without prejudice to Plaintiff's state law claim.

An appropriate Order is filed herewith.

**ENTERED** this the 23rd day of May, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge